## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **DENISE WHITE,** | )<br>) |
| Plaintiff, | )<br>) Case No.: 4:21-cv-00404 |
| | ) |
| v. | )<br>) |
| | ) **JURY TRIAL DEMANDED** |
| **JEREMY D. CURLEY,**<br>in his official capacity<br>**Serve at**:  10912 N. Manchester Ave<br>Kansas City, MO 64157 | )<br>)<br>)<br>)<br>) |
| | ) |
| **OFFICER WALTER M. LOVING**,<br>**Serve at**:  K.C. Police Department<br>9701 Marion Park Drive<br>Kansas City, MO 64137 | )<br>)<br>)<br>)<br>) |
| | ) |
| **KANSAS CITY BOARD OF POLICE**<br>**COMMISSIONERS** through Its Members,<br>SYLVESTER JAMES, NATHAN GARRET,<br>DON WAGNER, MARK TOLBERT, and<br>DAVID KENNER<br>**Serve at**:  1125 Locust Street<br>Kansas City, MO 64106 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) |
| **DOWNTOWN KANSAS CITY**<br>**COMMUNITY IMPROVEMENT**<br>**DISTRICT,**<br>**Serve**:  Suzi Roberts<br>1000 Walnut, Suite 200<br>Kansas City, MO 64106 | )<br>)<br>)<br>)<br>)<br>) |
| | ) |
| **THE DOWNTOWN COUNCIL d/b/a THE**<br>**DOWNTOWN COUNCIL OF KANAS CITY,**<br>**Serve**:  Suzi Roberts<br>1000 Walnut, Suite 200<br>Kansas City, MO 64106 | )<br>)<br>)<br>)<br>) |
| | ) |
| **UNITED AMERICAN SECURITY, LLC,**<br>**Serve at**:  CT Corporation System<br>120 South Central Avenue<br>Clayton, Missouri 63105 | )<br>)<br>)<br>)<br>) |
| | ) |
| Defendants. | ) |

# COMPLAINT

Plaintiff Denise White, by and through undersigned counsel, and for her causes of action states and alleges as follows:

## Parties

1.      Plaintiff Denise White is the surviving mother of the Decedent Robert White whose wrongful death was caused by Defendants.  Denise White resides in Palo Alto, California.

2.      Defendant Jeremy Curley (hereinafter "Defendant Curley") was at all relevant times a police officer with the Kansas City, Missouri Police Department.  At all times relevant hereto, Defendant Curley was acting in the course and scope of his employment with the Kansas City Missouri Police Department and was acting under the color of state law.  Upon information and belief, Defendant Curley resides in Jackson County, Missouri.

3.      Defendant Walter Loving (hereinafter "Defendant Loving") at all relevant times was a police officer with the Kansas City Missouri Police Department.  At all times relevant hereto, Defendant Loving was acting in the course and scope of his employment with the Kansas City, Missouri Police Department and was acting under the color of state law.  Upon information and belief, Defendant Loving resides in Jackson County, Missouri.

4.      Defendant Kansas City Board of Police Commissioners (the "Board") is a Commission created by Mo. Rev. Stat. §84.350, duly organized and existing by virtue of the laws of the State of Missouri, and is located in Jackson County, Missouri.  At all relevant times, the Board had a responsibility for the Kansas City Police Department as well as for the officers who serve in that department including Defendant Curley and Defendant Loving.  The Board had the full responsibility of managing the Kansas City Police Department and more specifically, the hiring, promoting, training, supervising, disciplining and firing employees of the Kansas City

Police Department. The Board can sue and be sued by and through its members in their respective capacities, specifically Defendants Sylvester James, Nathan Garrett, Don Wagner, Mark Tolbert, and David Kenner.

5.      The Board and its members are liable for damages caused by their respective employees and officers' intentional, wrongful, reckless and negligent acts, errors and/or omissions while the employees and officers are acting under color of state law and while they were acting within the course and scope of their employment with the Board and its members.

6.      Defendant United American Security, LLC is a Delaware limited liability company authorized to transact business in Missouri to provide contract security guard services. Upon information and belief, Defendant United American Security, LLC contracted with Downtown Kansas City Community Improvement District and/or the City of Kansas City, Missouri to supply security guard services including but not limited to providing security services at the Barney Allis Plaza located in Downtown Kansas City, Missouri. At all relevant times, all actions and omissions by Defendant United American Security were accomplished by and through the acts and omissions of its employees, agents or servants acting within the course and scope of their relationship with Defendant United American Security.

7.      Defendant Downtown Kansas City Community Improvement District, herein ("Downtown Kansas City CID") was and is a Missouri corporation, in good standing and operating as a community improvement district pursuant to Chapter 67 of the Missouri Revised Statutes, exclusively for the promotion of social welfare within the "Downtown Kansas City Loop." Defendant Downtown Kansas City CID was created pursuant to Mo. Rev. Stat. §67.1401 *et. seq.* to serve a number of purposes including coordination with public and private entities to plan and implement security services within the Downtown Kanas City CID including security services at

the Barney Allis Plaza. The Downtown Kansas City CID was responsible for providing a safe and secure environment in and around the Downtown Kansas City Loop. At all relevant times, all actions and omissions by Defendant Downtown Kansas City CID were accomplished by and through the acts and omissions of its employees, agents or servants acting within the course and scope of their relationship with Defendant Downtown Kansas City CID.

8. At all relevant times hereto, Defendant The Downtown Council was acting as an agent serving the business interests of Defendant Downtown Kansas City CID. Defendant Downtown Kansas City CID either controlled or had the right to control the conduct of Defendant The Downtown Council.

### Jurisdiction and Venue

9. Plaintiff Denise White brings this action due to the violation of her deceased son, Robert White's, civil rights under 42 U.S.C. §1983, 42 U.S.C. §1988, the Fourth Amendment and the Fourteenth Amendment to the United States Constitution as well as similar provisions of the Constitution of the State of Missouri when an unarmed Robert White was shot 17 times by Kansas City, Missouri police officers.

10. Jurisdiction is conferred by 28 U.S.C. §1343 which provides for original jurisdiction of this Court in any civil action to redress the deprivation under color of state law, statute or ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens and to recover damages under any Act of Congress providing for protection of civil rights. Plaintiff's actions for damages are authorized by 42 U.S.C. §1983, 42 U.S.C. §1988, the Fourth Amendment and the Fourteenth Amendment to the United States Constitution.

4

11.    Plaintiff hereby requests supplemental jurisdiction of her state law claims pursuant to 28 U.S.C. §1367 as Plaintiff's state law claims are so related to the claims giving rise to original jurisdiction in this Court that they form part of the same case or controversy under Article III of the United States Constitution.

12.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) because the events or omissions giving rise to Plaintiff's claims occurred in Kansas City, Jackson County, Missouri.

### Factual Allegations

13.    On June 14, 2018, Security Officer Michael Drone, an employee of United American Security, was acting as an unarmed security guard at the Barney Allis Plaza an outdoor open-air park and meeting space atop a parking garage across from the downtown Marriot Hotel.

14.    Upon information or belief, United American Security had contracted with either the City of Kansas City, Missouri, Defendant Downtown Kansas City CID and/or Defendant The Downtown Council to provide security services in the area of Bartle Hall including the Barney Allis Plaza.

15.    Upon information or belief, Defendant Downtown Kansas City CID and/or Defendant The Downtown Council undertook to provide security services at the Barney Allis Plaza area on or about June 14, 2018 and for a time period preceding that date. Defendant Downtown Kansas City CID and/or Defendant The Downtown Council undertook to provide security for the security and safety for the patrons at the Barney Allis Plaza on June 14, 2018. The undertaking by Defendant Downtown Kansas City CID and/or Defendant The Downtown Council was an undertaking done with the intention to protect the safety and health of patrons. Defendant Downtown Kansas City CID and/or Defendant The Downtown Council were negligent in their undertaking as described herein. Due to the fact that Defendant Downtown Kansas City CID

and/or Defendant The Downtown Council undertook to provide security, the Defendants had a duty to provide security in a non-negligent manner.

16.     In providing security services, United American Security was to provide more than a "warm body." United American Security was to provide security guards with the skills to ensure public safety, to maintain order and security within the area of his/her control and with the primary responsibility to protect persons from harm. Security guard services included patrolling the Barney Allis Plaza to ensure public safety. In addition to providing a security guard, United American Security also maintained video surveillance of the Barney Allis Plaza area.

17.     Shortly after 4:00 p.m. on June 14, 2018, Security Officer Drone came into contact with a man in the Barney Allis Plaza area later identified as Timothy Mosley.

18.     Security Officer Drone approached Mosley and another individual and spoke with Mosley. Mosley was acting "off the wall", was talking about "guys" or "people with guns" and what Mosley was saying to Security Officer Drone was not making sense.

19.     Following his conversation with Mosley, Security Officer Drone did not radio the office for United American Security to report Mosley, contact the Police Department or any other agency to report or seek help with or for Mosley despite Mosley telling Drone about people with guns and Mosley acting off the wall. Rather, when Mosley asked Security Officer Drone if he was doing anything wrong, Security Officer Drone responded no.

20.     Sometime after speaking to Security Officer Drone, Mosley left the Barney Allis Plaza area and went into the Marriot Hotel where he attempted to get a room. Mosley began acting irrationally and stated: "there are a lot of people here with guns bothering him." Mosley was asked to leave the Marriott and he exited the Marriot.

6

21.     Security Officer Drone was operating a golf cart as part of his duties as a security guard at the Barney Allis Plaza.  The golf cart was to assist in patrolling the Barney Allis Plaza area.  Security Officer Drone also had a radio that allowed him to communicate with the United American Security office.

22.     Near the time that Mosley went into the Marriott, Security Officer Drone parked the golf cart he was operating near the corner of 12th Street and Central in the Barney Allis Plaza. Security Officer Drone remained in the parked golf cart at the corner of 12th Street and Central for nearly 20 minutes and was not patrolling the Barney Allis Plaza area.

23.     After exiting the Marriott, Mosley returned to the Barney Allis Plaza and found Security Officer Drone sitting in the golf cart near the corner of 12th Street and Central.

24.     Mosley entered the golf cart occupied by Security Officer Drone.  Security Officer Drone reported that he was held at gunpoint by Mosley and told to drive his golf cart over to a white male sitting at a table alone.

25.     Security Officer Drone then drove himself and Mosley over to the table.  Mosley jumped out of the golf cart and began assaulting the white male who was later identified as Decedent Robert White.  Mosley assaulting White was observable on the video surveillance operated by United American Security.

26.     After Mosley exited the golf cart, Security Officer Drone ran away from the scene, across the Barney Allis Plaza and went to United American Security's office.  Security Officer Drone fleeing the scene and running across Barney Allis Plaza away from the unarmed White getting assaulted by Mosley also is observable on the video surveillance operated by United American Security.

27.     Upon information and belief, Security Officer Drone did not radio the United American Security office located at 310 W. 14th St Kansas City, MO 64105 and advise other security personnel in the office that White was being assaulted by Mosley.

28.     Upon information and belief, no one from United American Security contacted the Police Department to report that the unarmed White was being assaulted by Mosley until Security Officer Drone arrived at the United American Security office several minutes after Mosley began assaulting Robert White.

29.     Mosley repeatedly hit White in the head with a weapon resulting in multiple injuries to White.  For nearly ten minutes, Robert White was left alone getting assaulted multiple times by Mosley.

30.     Upon information and belief, United American Security personnel finally contacted the Kansas City, Missouri Police Department sometime after 4:51 p.m. and reported an African American male wearing all black clothing armed with a pistol was assaulting an unarmed white male wearing dark grey pants and a light grey shirt at the Barney Allis Plaza.

31.     Slightly before 5:00 p.m., Defendant Loving and his partner Kansas City Police Officer Michael Saunders were dispatched to the area of 12th & Wyandotte, Kansas City, Missouri.

32.     When Defendant Loving and Officer Saunders arrived at 12th & Wyandotte, they met up with Defendant Curley who was showing up to his off-duty shift at the Marriot Hotel. Employees of the Marriott Hotel advised Defendant Curley that an individual was being assaulted in the Barney Allis Plaza.

33.     Defendant Curley joined Defendant Loving and Officer Saunders in responding to the armed assault.

34.     As the officers approached Mosley and Robert White at Barney Allis Plaza all officers had their guns drawn and began to give commands.

35.     Upon information and belief, Robert White raised his hands in the air at least once in response to the officer's commands.  Upon information and belief, Mosley also raised his hands as the officers initially approached.

36.     As the officers continued to approach the two men with weapons drawn, Mosley grabbed Robert White and used him as a shield between himself and the officers.

37.     Defendant Curley observed a gun in Mosley's hand as the officers approached.

38.     Despite the fact that Mosley had grabbed Robert White, was using the unarmed Robert White as a human shield and Defendant Curley saw a gun in Mosley's hand, the officers continued to approach Mosley with their guns drawn rather than attempting to deescalate the situation.

39.     Defendant Loving claims that he also observed a weapon as the officers approached.  Defendant Loving claims he did not know which individual possessed the weapon despite at least one call to the Police Department reporting an African American male wearing all black clothing was armed with a pistol and was assaulting an unarmed white male wearing dark grey pants and a light grey shirt and Defendant Curley observing the gun in Mosley's hand.

40.     Robert White never had a weapon, never posed any threat to the officers and took no aggressive action toward any of the officers as they approached as White was being used as a human shield by Mosley.

41.     After observing the weapon, Defendant Loving shot center mass at both Mosley and the unarmed Robert White at least fifteen (15) different times.  Mosley's weapon was never fired during the encounter.

9

42.    In response to Defendant Loving discharging his firearm, Defendant Curley fired his weapon at least twice.

43.    Defendant Loving's partner, Officer Saunders, never fired his weapon during the entire encounter.

44.    At least seventeen (17) rounds from the firearms of Defendant Curley and Defendant Loving hit the body of Robert White resulting in nineteen (19) bullet wounds. Ten (10) bullets were retrieved from the body of the unarmed Robert White. Five bullets were retrieved from Timothy Mosley's body, who also died as a result of the shooting.

45.    After shooting the unarmed Robert White at least 17 times, Defendant Loving grabbed Robert White's legs and drug him across the ground several feet while Robert White was bleeding profusely from the 19 gunshot wounds.

46.    Defendant Loving then rolled Robert White onto his stomach and proceeded to place Robert White into handcuffs as White continued to bleed from the multiple gunshot wounds.

47.    While Robert White lay on the ground with his hands handcuffed behind his back bleeding to death, Defendant Loving viciously stepped on Robert White's right arm.

48.    Despite other police officers from the Kansas City, Missouri Police Department responding to the scene, none of the police officers rendered any aid to Robert White for over five and a half minutes after Robert White an unarmed and innocent person was gunned down by Defendant Loving and Defendant Curley.

49.    At no time prior to Defendant Loving and Defendant Curley encountering and shooting the unarmed Robert White, had any witnesses or reports been given to the Kansas City Police Department, to Defendant Loving, Defendant Curley or Officer Saunders that Robert White was armed, was the instigator of the assault by Mosley or was engaging in any criminal activity.

10

50.     Deadly force is reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.  There was no probable cause to believe that Robert White posed a significant threat of death or serious physical injury to the officers or others.

51.     Robert White died as a result of his injuries on June 14, 2018.

## COUNT I - EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION
### (Defendant Loving and Defendant Curley)

52.     Plaintiff hereby incorporates by reference the allegations and averments contained in Paragraphs 1 through 51 as though fully set forth herein.

53.     Defendant Loving and Defendant Curley's conduct as described above constitutes actions that shock the conscious under the Fourth and Fourteenth Amendments of the United States Constitution and violated clearly established constitutional and statutory rights.  The conduct of Defendant Loving and Defendant Curley was objectively unreasonable.

54.     Acting within the course and scope of their employment with the Kansas City Police Department and under color of state law, Defendant Loving and Defendant Curley acted without just cause or provocation and with the intent to cause serious bodily harm or death, assaulted, battered and killed unarmed Robert White by discharging their firearms and shooting Robert White at least 17 times.

55.     Instead of taking appropriate measures to assess the situation, Defendant Loving and Defendant Curley shot an unarmed Robert White multiple times and killed him.

56.     Defendant Loving and Defendant Curley lacked probable cause to kill Robert White because Robert White did not pose any threat to Defendant Loving, Defendant Curley or others.

11

57.     In drawing their firearms and shooting an unarmed, non-threatening Robert White at least 17 times Defendants used more force than was reasonably necessary.

58.     Defendant Loving and Defendant Curley violated Robert White's Fourth and Fourteenth Amendment rights in one or more of the following respects:

        a.   The use of deadly force was excessive and not objectively reasonable as Robert White was unarmed and Defendant Curley and Defendant Loving shot Robert White at least 17 times;

        b.   The use of force was excessive as at no time did Robert White threaten Defendant Loving or Defendant Curley, disobey commands given by the officers, and did not commit a felony or misdemeanor which warranted the use of deadly force; and,

        c.   The use of force in dragging Robert White several feet after Robert White had been shot at least 17 times, rolling him onto his stomach, placing him in handcuffs and stomping on his arm after he had been placed in handcuffs and as he was bleeding to death was excessive.

59.     The conduct of Defendant Loving and Defendant Curley as described above deprived Robert White of his right to be secure in his person against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and his right not to be deprived of life, liberty or property without due process of law and to be accorded equal protection of the law as guaranteed to him under the Fourteenth Amendment to the United States Constitution.

60.     As a direct and proximate result of the unlawful conduct of Defendant Loving and Defendant Curley, Robert White was caused to suffer severe pain, mental anguish and an agonizing death.  As a result of Robert White's death, Plaintiff Denise White has been deprived of

the Decedent's services, society, companionship, comfort, instruction, guidance, counsel, training, support, love, affection and income.

61.    The conduct of Defendant Loving and Defendant Curley was reckless, malicious, wanton, willful and violated Robert White's constitutional rights and an award of punitive damages is necessary to punish Defendant Loving and Defendant Curley and to deter others from the same or similar transgression in the future.

WHEREFORE, Plaintiff Denise White requests judgment for general, special and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT II - WRONGFUL DEATH
### (Defendant Loving and Defendant Curley)

62.    Plaintiff hereby incorporates by reference the allegations and averments contained in Paragraphs 1 through 61 as though fully set forth herein.

63.    Plaintiff maintains this action for wrongful death pursuant to Mo. Rev. Stat. §537.080.

64.    Defendant Loving and Defendant Curley intentionally discharged their firearms without justification causing an unreasonable apprehension of harm and death to Robert White.

65.    Defendant Loving and Defendant Curley fired their weapons at Robert White without justification, intentionally and wrongfully causing the death of Robert White.

66.    Defendant Loving and Defendant Curley caused an offensive bodily contact with Robert White by shooting and killing him.

67.    Defendant Loving and Defendant Curley were not acting in lawful self-defense.

68.    In drawing their firearms and shooting an unarmed, nonthreatening Robert White, Defendants used more force than was reasonably necessary.

13

69.     The use of force by Defendants was unjustified in that they failed to make any attempt to use non-lethal means to resolve the situation.

70.     As a direct result of this intentional tort by Defendant Curley and Defendant Loving, Plaintiff has sustained damage including but not limited to loss of consortium, companionship, comfort, instruction, guidance, counsel, training and support in addition to funeral expenses for the Decedent.

71.     Robert White also endured pain and suffering between the time of the first bullet penetrating his body and the time of his death.  Plaintiff is entitled to a claim for damages based upon this pain and suffering, all pursuant to Mo. Rev. Stat. §537.080.

72.     Defendant Curley and Defendant Loving's actions were willful, wanton, or malicious and constituted gross misconduct, and demonstrated a conscious and reckless disregard for the rights of Plaintiff and Decedent and an award of punitive damages is necessary to punish Defendant Loving and Defendant Curley and to deter others from the same or similar transgression in the future.

WHEREFORE, Plaintiff Denise White requests judgment for general, special and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT III - DELIBERATELY INDIFFERENT POLICIES, PRACTICES, CUSTOMS, TRAINING AND SUPERVISION IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT
### (Board of Police Commissioners)

73.     Plaintiff hereby incorporates by reference the allegations and averments contained in Paragraphs 1 through 72 as though fully set forth herein.

14

74.     The Board had in effect, both before and at the time of the events alleged in this Complaint, policies, practices and patterns of conduct and customs which operated to deprive Robert White of his constitutional rights.

75.     The Board is liable under 42 U.S.C. §1983 because the Board's policies, customs and practices including the retention, training, discipline and supervision of law enforcement encourage and allowed those officers to violate the constitutional rights of Robert White and demonstrates deliberate indifference to Robert White's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and his right not to be deprived of life, liberty or property without due process of law and to be accorded equal protection of the law as guaranteed to him under the Fourteenth Amendment to the United States Constitution.

76.     All the acts or omissions of Defendant Loving and Defendant Curley took place under color of state law pursuant to, acting upon, and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders and customs of the Board and its members. The Board and its members are liable for damages caused by their respective employees and officers' intentional, wrongful, reckless and negligent acts or omissions while the employees and officers were acting under color of state law and while they were acting within the course and scope of their employment with the Board and its members. All of these acts or omissions took place under circumstances where the Board and its members, as well as Defendant Loving and Defendant Curley, are liable as governmental entities, employees and sworn law enforcement officers in the State of Missouri. The Board's liability is based upon allegations described in this Complaint all of which demonstrate patterns of behavior and deliberate indifference to the issues raised in this Complaint and to the rights of citizens, all of which led to deprivations of rights,

15

privileges and immunities secured by the federal and states constitution as well as federal and state laws.

77.     The Board engaged in unlawful and unconstitutional policies, practices and customs, including but not limited to, the following:

   a.   Violation and deprivation of constitutional rights as set forth in this Complaint;

   b.   Inadequate training and instruction of employees on the proper use of police power, proper seizure, proper searches, use of deadly force and investigation of alleged crime in the State of Missouri;

   c.   Inadequate supervision of employees as to the proper use of police power, proper seizures, proper searches, use of deadly force and investigation of crime in the State of Missouri;

   d.   Inadequate discipline of employees as to the proper use of police power, proper seizures, proper searches, use of deadly force and investigation of crime in the State of Missouri;

   e.   Inadequate supervision, training and retention with resulting poor personnel decisions as to employees regarding the proper use of police power, proper seizure, proper searches, use of deadly force and investigation of alleged crime in the State of Missouri;

   f.   Failure to take significant steps to prevent known risk of excessive use of force and improper seizure;

   g.   Failure to properly train officers to deescalate instead of escalating hostage situations;

16

h.  Failure to adopt and properly implement policies with regard to the de-escalation of hostage situations;

i.  Deliberate indifference to and conscious disregard for the high risk that law enforcement officers would improperly use their influence as law enforcement officers and/or fail to protect against such improper influence in violation of Robert White's rights; and,

j.  Failure to take significant steps to prevent a known risk of the wrongful use of deadly force.

78.     These actions, omissions, policies, practices, procedures, patterns, decisions, orders and customs of the Board were the cause of constitutional and other violations described in this Complaint.  These interrelated policies, practices and customs, separately and together, were implemented intentionally to deprive individuals including Robert White of their constitutional rights or, at the very least, were implemented with recklessness or deliberate indifference to the rights of individuals and were a direct and proximate cause of the constitutional violations as set forth in this Complaint.

79.     The Board ratified and implemented, before and during the relevant period, each of the policies, practices, patterns of conduct and customs described herein.  The Board's custom/practice was so well settled as to constitute custom or usage with force of law, authorizing the use of deadly force was a moving force of the shooting, injuries and death of Robert White.

80.     The individual members of the Board, at all relevant times, was acting under the color of state law in their capacity as members of the Kanas City Board of Police Commissioners and their acts or omissions were conducted within the scope of their official duties or employment.

17

81.     At the time of the events described in this Complaint, Robert White had a clearly established constitutional right under the Fourth Amendment to be free from unreasonable search and seizure and his right to be free from excessive force by law enforcement guaranteed to him under the Fourteenth Amendment to the United States Constitution.

82.     As a direct result of the Board's conduct, Plaintiff is entitled to monetary relief for her actual damages and is entitled to punitive damages as the actions were intentional and demonstrated a reckless disregard for human health, safety and deliberate indifferent to Robert White's constitutional rights.

WHEREFORE, Plaintiff Denise White requests judgment for general, special and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT IV - WRONGFUL DEATH
### (Downtown Kansas City Community Improvement District and The Downtown Council)

83.     Plaintiff hereby incorporates by reference the allegations and averments contained in Paragraphs 1 through 82 as though fully set forth herein.

84.     Upon information and belief, Defendant Downtown Kansas City CID and/or Defendant The Downtown Council undertook to provide security in the Barney Allis Plaza area on or about June 14, 2018.  Defendant Downtown Kansas City CID and/or Defendant The Downtown Council undertook to provide security and safety for the patrons of the Barney Allis Plaza.  This undertaking was done with the intention to protect the safety and health of patrons. Due to the fact that Defendant Downtown Kansas City CID and/or Defendant The Downtown Council undertook to provide security, it had duty to provide security in a non-negligent manner.

18

85.     Defendant Downtown Kansas City CID and/or Defendant The Downtown Council owed a duty to Robert White to protect Robert White from injury.  Defendant Downtown Kansas City CID and/or Defendant The Downtown Council failed to execute that duty and their failure resulted in a fatal injury to Robert White.

86.     Robert White was assaulted by Timothy Mosley on June 14, 2018, in the Barney Allis Plaza.  Mosley assaulting Robert White was foreseeable to Defendant Downtown Kansas City CID and/or Defendant The Downtown Council based on the existence of past incidents of crimes in the Downtown Kansas City CID area as well as Security Officer Drone's interactions with Timothy Mosley prior to Mosley assaulting Robert White.

87.     Upon information and belief, prior to June 14, 2018, there were specific incidents of violent crime on or near the Barney Allis Plaza and within the boundaries of the Downtown Kansas City CID that were sufficiently numerous and recent to put Defendant Downtown Kansas City CID and/or Defendant The Downtown Council on notice, both actual and constructive, that there was a likelihood third persons would endanger the safety of patrons at the Barney Allis Plaza.

88.     On June 14, 2018, Defendant Downtown Kansas City CID and/or Defendant The Downtown Council breached their duties in one or more of the following respects:

      a.   Failing to provide reasonable and effective security in and around the Barney Allis Plaza;

      b.   Failing to provide appropriate and adequate security measures in and around the Barney Allis Plaza;

      c.   Having an adequate number of security personnel present in and around the Barney Allis Plaza;

19

d. Employing security personnel present in and around Barney Allis Plaza who lacked sufficient training and/or experience;

e. Failing to take reasonable measures to ensure the safety of patrons of Barney Allis Plaza;

f. Failing to protect Robert White from the foreseeable criminal conduct of others within the boundaries of the Barney Allis Plaza;

g. Failing to provide adequate security;

h. Failing to provide sufficient security to provide deterrence from crime and failing to maintain high visibility of security;

i. Failing to properly assess the risk of crime in the area of the Barney Allis Plaza;

j. Failing to adequately assess crime trends so as to have additional security; and

k. Failing to act to prevent, remove, or escort public who were acting suspicious, irrational, or presented a danger to the public.

89. As a direct result of the negligence of the Defendant Downtown Kansas City CID and/or Defendant The Downtown Council or negligence combined, Plaintiff's Decedent, Robert White, sustained an assault and multiple gunshot wounds which led to his death.

90. The conduct of Defendant Downtown Kansas City CID and/or Defendant The Downtown Council was reckless, malicious, wanton, willful and an award of punitive damages is necessary to punish Defendant Downtown Kansas City CID and/or Defendant The Downtown Council and Defendant Downtown Kansas City CID and/or Defendant The Downtown Council and to deter others from the same or similar transgressions in the future.

20

WHEREFORE, Plaintiff Denise White requests judgment for general, special and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## COUNT V - WRONGFUL DEATH
### (United American Security)

91.     Plaintiff hereby incorporates by reference the allegations and averments contained in Paragraphs 1 through 90 as though fully set forth herein.

92.     At all relevant times, Defendant United American Security had a duty to possess and use the degree of skill and learning ordinarily used under the same or similar circumstances by members of Defendant's profession in providing security while on or near the Barney Allis Plaza.

93.     Defendant United American Security owed a duty to patrons of the Barney Allis Plaza including Decedent Robert White to make safe the dangers known to it in and around Barney Allis Plaza.

94.     Defendant United American Security had policies and procedures which dictated its security officers were to ensure the safety and security of patrons at Barney Allis Plaza.

95.     Upon information and belief, prior to June 14, 2018, there were specific incidents of violent crime on or near the Barney Allis Plaza and within the boundaries of the Downtown Kansas City CID that were sufficiently numerous and recent to put Defendant United American Security on notice, both actual and constructive, that there was a likelihood third persons would endanger the safety of patrons at the Barney Allis Plaza.

96.     Robert White was assaulted by Timothy Mosley on June 14, 2018, in the Barney Allis Plaza. Mosley assaulting Robert White was foreseeable to Defendant United American Security based on the existence of past incidents of crimes in the Downtown Kansas City CID area

21

as well as Security Officer Drone's interactions with Timothy Mosley prior to Mosley assaulting Robert White.

97.     Defendant United American Security breached its duty of care and committed the following acts of negligence and carelessness by failing to attain the requisite standards of due care, practice, and skill required by members of Defendant United American Security's profession, to-wit Defendant United American Security failed to:

a.  Provide adequate security in and around Barney Allis Plaza;

b.  Properly train officers to provide security at Barney Allis Plaza;

c.  Provide appropriate and adequate security measures in and around Barney Allis Plaza;

d.  Have an adequate number of security personnel in and around Barney Allis Plaza;

e.  Employ security personnel with sufficient training and/or experience;

f.  Take reasonable measures to ensure the safety of patrons of the Barney Allis Plaza;

g.  Recognize Timothy Mosley as a threat to the safety of patrons of the Barney Allis Plaza after encountering Timothy Mosley;

h.  Timely notify the Kansas City Missouri Police Department when Timothy Mosley began assaulting Robert White;

i.  Properly monitor and/or patrol the Barney Allis Plaza area;

j.  Report suspicious behavior to the appropriate law enforcement agency; and,

k.  Failing to act to prevent, remove, or escort public who were acting suspicious, irrational, or presented a danger to the public.

22

98.     As a direct result of the negligence of the Defendant United American Security or the negligence combined, Decedent Robert White, sustained an assault and multiple gunshot wounds which led to his death.

99.     Robert White endured pain and suffering between the time of the first shot penetrating his body and the time of his death.  Plaintiff is entitled to the reasonable value of the loss of services, companionship, comfort, instruction, guidance, counsel, training, and support by reason of Robert White's death.

WHEREFORE, Plaintiff Denise White requests judgment for general, special and punitive damages in a sum that this Court may deem just and reasonable, for costs of the suit and attorneys' fees, and for such other relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues.

Respectfully submitted,


*/s/William P. Denning*
William P. Denning,          MO #52869
Paeten E. Denning          MO #72180
Denning Law Firm, LLC
4717 Grand Avenue, Ste. 130
Kansas City, MO  64112
Telephone:     (816) 702-8400
Facsimile:      (816) 702-8401
wdenning@denninglawfirm.com
pdenning@denninglawfirm.com
*ATTORNEYS FOR PLAINTIFF*